## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## BOWLING GREEN DIVISION
## CIVIL ACTION NO. 1:15CV-00052-GNS

**JULIE FRANKLIN**                                                             **PLAINTIFF**

**VS.**

**CAROLYN W. COLVIN, Acting**
**Commissioner of Social Security**                             **DEFENDANT**

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND RECOMMENTATION

### BACKGROUND

Plaintiff Julie Franklin ("Franklin") brings this action under 42 U.S.C. § 405(g), seeking review of the Commissioner of Social Security's final decision denying her application for disability insurance benefits and supplemental security income benefits. Both Franklin (DN 14) and the Commissioner (DN 15) have filed a Fact and Law Summary. The District Judge has referred the case to the undersigned United States Magistrate Judge (DN 11) to review the Fact and Law Summaries and submit Findings of Fact, Conclusions of Law, and Recommendations. 28 U.S.C. § 636(b)(1)(B).

### FINDINGS OF FACT

In 2005, Franklin quit working for I.H. Cleaners after suffering from a back injury while on the job (Tr. 225-226, 228). She subsequently applied for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"), alleging that she became disabled on March 3,

2008 (Tr. 288), as a result of degenerative disc disease, liver condition, a pinched nerve in her hip, and hip, leg, and foot pain (Tr. 288, 453). Her applications were denied initially (Tr. 301, 315) and upon reconsideration (Tr. 335, 351). Administrative Law Judge Robert B. Bowling ("ALJ") conducted a hearing in Lexington, Kentucky (Tr. 219). Franklin and her attorney attended the hearing (Tr. 221). Betty Hale, an impartial vocational expert also attended the hearing and testified (Tr. 219).

During the hearing, Franklin answered questions relating to both her physical and psychological impairments. Franklin testified that she has an eighth grade education and has unsuccessfully attempted to earn her GED three or four times (Tr. 243). She also testified that she has a driver's license and drives maybe twice a week but only for short distances (Tr. 224). Franklin had lower back surgery in 2009 and has undergone injections and physical therapy (Tr. 233-34). She indicated she can sit or stand for 30-40 minutes, can walk about 100 yards before needing to sit, can lift about ten pounds, sometimes has trouble reaching for items, loses her balances when she bends forward, and cannot crawl (Tr. 237-39). Although she cannot vacuum, mop, garden, or take out the trash, Franklin stated that she is able to wash dishes, do laundry, pay bills, and pick up medication (Tr. 241-42).

As far as psychological and mental limitations, Franklin testified that she gets sidetracked easily, has problems understanding information, and doesn't like to be around people (Tr. 239-40). Along with the hearing testimony, the record before the ALJ contained reports from state agency physicians, consultative examination reports from Dr. Brian Harshman and Dr. Ollie Dennis, and treatment records from Taylor Rural Health (including a physical capacities evaluation from Dr. Martha Seeley).

On August 30, 2013, the ALJ issued an unfavorable decision. The ALJ applied the traditional five-step sequential analysis promulgated by the Commissioner, 20 C.F.R. 20 C.F.R § 404.1520; Kyle v. Comm'r of Soc. Sec., 609 F.3d 847, 855 (6th Cir. 2010), and found as follows. First, Franklin has not engaged in substantial gainful activity since March 3, 2008, her alleged onset date (Tr. 207). Second, Franklin has the severe impairments of: disorders of the spine and anxiety disorders (Id.). Third, Franklin does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment from C.F.R. Pt. 404, Subpt. P, App'x 1 (Tr. 208). Fourth, Franklin has the residual functional capacity to perform "light work" with the following restrictions:

> [S]he must avoid climbing ropes, ladders, scaffolds, whole body vibration, hazardous machinery and heights. She is limited to tasks with no repetitive bending and lifting. The claimant has moderately limited ability to understand, remember and carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, and respond appropriately to changes in the work setting. The claimant is able to understand and remember simple instructions and procedures requiring brief initial learning periods. The claimant is able to sustain concentration, effort and pace for simple tasks requiring little independent judgment, involving minimal variations, and doing so [sic] requisite schedules of work and breaks. The claimant is able to interact frequently as needed with supervisors, peers and sufficiently for task completion, yet requiring no more than occasional interaction with the public. The claimant is able to adapt adequately to situational conditions and changes with reasonable support and structure.

(Tr. 210). Additionally, Franklin is unable to perform any of her past relevant work (Tr. 213). Fifth and finally, considering, Franklin's age (36 years old), limited education, work experience,

and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform (Id.).

Franklin appealed the ALJ's decision (Tr. 1). The Appeals Council declined review (Tr. 270). At that point, the denial became the final decision of the Commissioner, and Turner appealed to this Court.

## CONCLUSIONS OF LAW

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> [i]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. See "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the residual functional capacity to return to his or her past relevant work?

5) Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

### A. Standard of Review

When reviewing the Administrative Law Judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, the Court's review of the Administrative Law Judge's decision is limited to an inquiry as to whether the Administrative Law Judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the Administrative Law Judge employed the proper legal standards in reaching her conclusion. See Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993) (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)).

## B. Finding No. 3

At the second step of his evaluation, the ALJ found that Franklin had the severe impairments of "disorders of the spine and anxiety disorders" and the non-severe impairments of affective disorder and obesity (Tr. 208). Franklin argues that the ALJ failed to "consider all of her impairments in contradiction of 20 U.S.C.A. § 404.1523, 404.1545(a)(2)" (DN 14, at p. 2). Specifically, Franklin claims that the ALJ failed to take into account the limitations regarding her left shoulder (Id. at p. 3). The Commissioner counters that substantial evidence supports the ALJ's determination that Franklin's left shoulder pain was not a severe impairment (DN 15, at p. 5).

The second step of the evaluation process asks whether the claimant has a "severe medically determinable physical or mental impairment" or "a combination of impairments that is severe." 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.920(a)(4)(ii). To satisfy this burden, the claimant must show she suffers from a "medically determinable" physical or mental condition that satisfies the duration requirement (20 C.F.R. §§ 404.1509, 416.909) and "significantly limits" her ability to do one or more basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii) and (c), 416.920(a)(4)(ii) and (c); Social Security Ruling 96-3p; Social Security Ruling 96-4p. This circuit construes the step two severity regulation as a "*de minimis* hurdle," Higgs v. Bowen, 880 F.2d 860, 862 (6th Cir. 1988) (citations omitted), intended to "screen out totally groundless claims." Farris v. Sec'y of Health & Human Servs., 773 F.2d 85, 89 (6th Cir. 1985). Although the standard is *de minimis*, the claimant still bears the burden of demonstrating she suffers from a severe medical impairment, which requires "medical signs and laboratory findings." Social Security Ruling 96-4p, 1996 WL 374187, at *1.

In attempting to prove that her left shoulder strain is a severe impairment, Franklin puts forth Dr. Seeley's diagnosis of "left shoulder pain" and Dr. Seeley's advice that she should use a cane (DN 14, at p. 3). It is well established, however, that the mere diagnosis of an impairment says nothing about the severity of that impairment. Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988) (citing Foster v. Bowen, 853 F.2d 483, 489 (6th Cir. 1988)). As for Dr. Seeley's advice regarding Franklin's use of a cane, this evidence does not specifically establish any limitation on Franklin's ability to work due to left shoulder pain (Tr. 235, 687). Thus, Franklin has not carried her *de minimis* burden.[1]

Further, when an Administrative Law Judge determines that one of more of a claimant's impairments is severe, he "must consider limitations and restrictions imposed by all of the claimant's impairments, even those that are not 'severe'" Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *5. When an Administrative Law Judge considers "all of the claimant's impairments in the remaining steps of the disability determination," a "failure to find additional severe impairments at step two '[does] not constitute reversible error.'" Fisk v. Astrue, 253 F. App'x 580, 583 (6th Cir. 2007) (quoting Maziarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987)).

In this case, the ALJ considered limitations and restrictions imposed by all of Franklin's impairments, including her non-severe impairments. At step three the ALJ accounted for Franklin's claim of left shoulder strain, stating that "[d]espite disorders of the spine, *shoulder*, hip pain, and obesity, there is no evidence of inability to ambulate effectively or inability to perform

---

[1] An examination of the rest of the record additionally provides little indication that Franklin's left shoulder pain limits her ability to work. Dr. Harshman, a consultative examiner, did not make any reference to Franklin's shoulder pain in his opinion (Tr. 519-20), and the State agency examiners mention only that a diagnostic study was done on Franklin's shoulder in March of 2012, revealing that her total passive motion and range of motion were intact (Tr. 299, 310, 331, 347).

7

*lifting, carrying, reaching overhead* and activities requiring fine movements . . ." (Tr. 208) (emphasis added). When the ALJ assessed Franklin's residual functional capacity, he noted her complaints of "difficulty reaching with her left upper extremity" and her left shoulder hurting (Tr. 211). Because the ALJ considered Franklin's left shoulder pain when making his step three and step four determinations, the undersigned finds it "unnecessary to decide" whether the ALJ erred in failing to classify this impairment as severe at step two. Fisk, 253 F. App'x at 584 (quoting Maziarz, 837 F.2d at 244).

### C. Finding No. 4

Franklin next argues that the ALJ failed to address objective medical evidence from the record regarding her spinal disorder in evaluating her claim under Listing 1.04 (DN 14, at p. 4). Franklin contends that the ALJ selected one MRI from the record to discuss in his decision but neglected all of the other objective medical evidence (Id.). In opposition, the Commissioner claims that the medical record "very clearly shows Listing 1.04 is not equaled or met here" (DN 15, at p. 8).

A claimant must meet *all* of the specified medical criteria of a listing in order to show that her impairment matches the listing. Sullivan v. Zebley, 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (emphasis added). "It is insufficient that a claimant comes close to meeting the requirements of a listed impairment." Elam ex rel. Golay v. Comm'r of Soc. Sec., 348 F.3d 124, 125 (6th Cir. 2003) (citing Dorton v. Heckler, 789 F.2d 363, 367 (6th Cir. 1986)). Listing 1.04 covers "Disorders of the spine (e.g., herniated nucleus pulpsus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in

*compromise of a nerve root . . . or the spinal cord.*" 20 C.F.R. Pt. 404, Subpt P, App. 1, Listing 1.04 (emphasis added). Additionally, to satisfy Listing 1.04, a claimant must prove either:

> A. Evidence of nerve root compression characterized by nuero-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakened or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting back or supine); or
>
> . . .
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptably imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

Id.[2]

Here, the ALJ found that Franklin's spinal disorder did not meet Listing 1.04 because "there is no evidence of inability to ambulate effectively or inability to perform lifting, carrying, reaching overhead and activities requiring fine movements" (Tr. 208). The ALJ also noted that an MRI from June 27, 2012, indicated mild degenerative disc disease at L3, L4, and L5-S1, but did not result in a significant level of restriction (Tr. 208). The ALJ's brief explanation warrants review of Franklin's medical records regarding her spinal impairments.

In 2008, Franklin underwent lumbar spine surgery for "scar tissue removal" which improved her lower back pain (Tr. 519). Two years later consultative examiner Dr. Brian Harshman found that Franklin had "[n]o scoliosis or spasms," that her "[s]upine straight leg raise was limited, concurrent with lumbar flexion," and her "[s]eated straight leg raise were [sic]

---

2 The undersigned assumes that Franklin is claiming she meets Listing 1.04A and 1.04C because she summarizes those Listings in her argument but does not summarize Listing 1.04B.

9

normal" (Tr. 520). Dr. Harshman opined that her orthopedic exam demonstrated "*only* lumbar flexion limitation" with "normal gait and station without sensory loss or reflex abnormality" (Tr. 521) (emphasis added). On June 27, 2012, Franklin underwent an MRI, which revealed left extraforaminal disk protrusion impinging upon the existing nerve root, left foraminal annular tear, and mild degenerative disc disease (Tr. 554). Treatment notes from physicians at Taylor Regional Hospital consistently diagnosed Franklin with chronic lower back pain (Tr. 651-54, 681, 683), and Dr. Martha Seeley diagnosed Franklin with "lumbar disc disease" (Tr. 677).

It is evident from these records that Franklin cannot meet all of the elements of Listing 1.04A or C. Although Franklin's MRI results indicated "mild degenerative disc disease" and "disk protrusion impinging upon the existing nerve root," the results do not specify that the nerve root or spinal cord was compromised. Moreover, the criteria of 1.04A are not met because Dr. Harshman found Franklin had no sensory loss or reflex abnormality. Franklin's impairments similarly do not meet the elements of 1.04C because none of her records indicate "lumbar spinal stenosis" or "an inability to ambulate effectively." Thus, the medical records do not support the conclusion that Franklin's impairments rise to a level that meets or satisfies the stringent criteria of Listing 1.04A or C.

Franklin also claims that the ALJ's determination that she does not have a serious mental impairment is not supported by substantial evidence (DN 14, at p. 7). This argument, unfortunately, is undeveloped and incomplete. "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation are deemed waived." McPherson v. Kelsey, 125 F.3d 989, 995-96 (6th Cir. 1997) (citations omitted). Because Franklin offered no

real analysis, the undersigned considers her argument regarding the severity of her mental impairments to be waived.

### D. Finding No. 5

Franklin argues the ALJ erred at the fourth step of his evaluation by improperly applying the treating physician rule because he failed to articulate good reasons for discounting Dr. Seeley's physical capacities evaluation as required by 20 C.F.R. § 404.1527(d)(2) (DN 14, at p. 6). The Commissioner counters that the ALJ did provide good reasons for not giving controlling weight to Dr. Seeley's evaluation, including that Dr. Seeley's evaluation is internally inconsistent (DN 15, at pp. 13-15). Both parties seem to agree that Dr. Seeley is Franklin's treating physician.[3]

In making his residual functional capacity determination at step five of the evaluation, the Administrative Law Judge assigns weight to the medical source statements in the record. 20 C.F.R. §§ 404.1527(c), 404.1529, Social Security Ruling 96-7p. The Administrative Law Judge determines how much weight to afford an opinion based upon the source rendering that opinion. Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 376 (6th Cir. 2013). Treating-source opinions must be given "controlling weight" when two conditions are met: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the

---

3 The undersigned questions whether Dr. Seeley can properly be considered Franklin's treating physician at the time she rendered her physical capacities evaluation. All of Dr. Seeley's treatment notes from the record are dated *on or after* the date on which Dr. Seeley executed her evaluation (Tr. 677, 683-84, 686-87, 869-90, 708-09). As such, it seems that Franklin's first appointment with Dr. Seeley was the same day that Dr. Seeley filled out the physical capacities evaluation. The regulations define treating source as "your own physician, psychologist or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. § 404.1502. The record indicates that at the time of Dr. Seeley's evaluation she had not yet established an ongoing treatment relationship with Franklin.

11

opinion is "not inconsistent with other substantial evidence in the record." 20 C.F.R. § 416.927(c)(2).

If the Administrative Law Judge elects not to accord controlling weight to a treating physician's opinion, the regulations require him to give "good reasons" for the weight he assigns to the opinion. Id.; Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). "This procedural requirement 'ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.'" Gayheart, 710 F.3d at 376 (quoting Wilson, 378 F.3d at 544). Additionally, in determining what weight to afford the treating source's opinion, the Administrative Law Judge must consider a list of factors from the regulations. 20 C.F.R. § 416.927(c)(1)-(5); Gayheart, 710 F.3d at 376. These factors include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) consistency of the opinion with the record as a whole; and (5) the specialization of the treating source. 20 C.F.R. § 416.927(c)(2).

Here, the ALJ found, "[a]ll of the physician's opinions are given great weight because they are consistent with the medical evidence of record and each other *except for the physical assessment by Dr. Seely* [sic] . . . which is inconsistent with the medical evidence and the other physician's findings" (Tr. 212). The ALJ did not explicitly determine that Dr. Seeley's opinion was not entitled to controlling weight and, similarly, did not specify that he applied the controlling weight standard in making his determination.[4]

---

[4] The Sixth Circuit has indicated that the regulations, 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2), require an Administrative Law Judge to make separate findings about the controlling weight and the amount of weight eventually

Beyond stating that Dr. Seeley's opinion was inconsistent with the record, the ALJ fails to list any "good reasons" or evaluate the factors listed in 20 C.F.R § 416.927(c)(2).[5] The ALJ did not point to any specific clinical findings, examinations, or other medical evidence in reaching his decision. Generally, conclusory dismissal of a treating physician's opinion constitutes reversible error. See Bowen v. Comm'r of Soc. Sec., 478 F.3d 742, 747 (6th Cir. 2007) (ALJ's failure to give good reasons required remand because it violated substantive protection afforded by the regulation); Cunningham v. Colvin, No. 1:13CV1369, 2014 WL 4545919, at *5 (N.D. Ohio Sept. 12, 2014) (holding the ALJ's generic references to "objectively reported findings" and "other treating source medical evidence" are insufficient to meet good reasons requirement and necessitated remand). The Sixth Circuit emphasizes that it will "not hesitate to remand" cases when the agency fails to follow its own regulations by not stating "good reasons" for giving diminished weight or no weight to a treating physician's opinion. Allen v. Comm'r of Soc. Sec., 573 F.3d 263, 267 (6th Cir. 2009) (citing Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 546-47 (6th Cir. 2004)).

Nonetheless, the Sixth Circuit has recognized a narrow set of circumstances in which a violation of the good reasons requirement can be deemed "harmless error." Cole v. Astrue, 661 F.3d 931, 941 (6th Cir. 2011). Namely, the violation can be deemed harmless error if "(1) a

---

given to a treating source's opinion. See Gayheart, 710 F.3d at 376-77; Wilson, 378 F.3d at 546.

5 The Court in Gayheart indicated that even when an Administrative Law Judge finds that a treating physician's opinion fails both prongs of the test for controlling weight (they "are not well supported by any objective findings" and are "inconsistent with other credible evidence"), the ALJ still must provide "good reasons" for why the treating physician's opinion fails to meet either prong of the test. 710 F.3d 365, 376 (6th Cir. 2013). Therefore, merely stating that the controlling weight test is not met is insufficient under the regulations.

treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of § 1527(d)(2) ... even though she has not complied with the terms of the regulation." Id. (quoting Friend v. Comm'r of Soc. Sec., 375 F. App'x 543, 551 (6th Cir. 2010) (quoting Wilson, 378 F.3d at 547)).

  Here, the undersigned cannot conclusively determine that Dr. Seeley's opinion is patently deficient. The evaluation is internally inconsistent and provides little explanation as to why Dr. Seeley made these determinations; however, her evaluation is not entirely inconsistent with the record and other objective medical evidence. In fact, Dr. Seeley's restrictions as to climbing, lifting, and bending correlate with the restrictions suggested by the State agency physician. As to the second harmless error exception, although the ALJ incorporated some restrictions in his RFC that are similar to restrictions imposed by Dr. Seeley's evaluation, the ALJ explicitly made findings contrary to the evaluation. For instance, Dr. Seeley opined that in an 8-hour-workday, Franklin can do no standing, sitting, or walking; whereas, the ALJ determined Franklin is capable of performing light work with no enumerated standing, sitting, or walking limitations. Finally, the ALJ did not meet the goal of the regulations because the ALJ's general statement rejecting Dr. Seeley's evaluation does not permit meaningful judicial review. The undersigned therefore finds that the ALJ's violation cannot be deemed harmless error.

  Because the ALJ's decision did not adhere to the regulations, the undersigned finds remand is required.[6] On remand, the ALJ should specifically explain his weight determination as

---

6 If the ALJ intended to classify Dr. Seeley as an examining source, rather than a treating source, the outcome remains the same. Although an Administrative Law Judge does not have to provide "good reasons" for the weight given to

14

to Dr. Seeley's physical capacities evaluation.

### E. Drummond Analysis

After reviewing the record, the undersigned discovered that Franklin had filed two prior applications for SSI and DIB. Franklin's first application was denied initially and on reconsideration, but the decision was reversed by Administrative Law Judge Sheila Lowther on April 9, 2010 (Tr. 205, 293-94). Franklin's second application was denied initially and on reconsideration, and then the decision was affirmed by Administrative Law Judge Ronald M. Kayser on February 21, 2012 (Tr. 205, 292-93). In evaluating Franklin's current claim, the State agency examiners at both the initial and reconsideration levels identified that Drummond v. Comm'r of Soc. Sec., 126 F.3d 837 (6th Cir. 1997) should apply to the ALJ's decision (Tr. 299, 328).

In Drummond, the Sixth Circuit established "that the principles of *res judicata* can be applied against the Commissioner." 126 F.3d at 842. Accordingly, "[w]hen the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances." Id. In the decision at issue, the ALJ did not mention Drummond or recognize the prior RFC determination. Additionally, neither Franklin, nor the Commissioner, makes any argument regarding whether Drummond and the principles of *res judicata* should have been applied to her RFC determination. In fact, the prior Administrative Law Judges' decisions are not contained in the record.

---

the opinion of an examining source, the Administrative Law Judge is still required to consider the factors listed in 20 C.F.R. § 416.927(c). Ealy v. Comm'r of Soc. Sec., 594 F.3d 504, 514 (6th Cir. 2010). The ALJ here generally made a statement about one factor from the regulations—the consistency of the opinion--but failed to address any of the other factors. Thus, the undersigned finds the ALJ's reasoning is inadequate regardless of how he meant to characterize Dr. Seeley's evaluation.

The undersigned finds that the ALJ's failure to address <u>Drummond</u> and the application of *res judicata* in his decision further requires that the case be remanded. Upon remand, the ALJ should perform a <u>Drummond</u> analysis to determine whether *res judicata* binds him to the prior Administrative Law Judges' determinations.

RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the Court **REVERSE** the ALJ's decision and **REMAND** the case for further proceedings consistent with the instant Report and Recommendation. Upon remand, the ALJ shall reevaluate the opinion of Dr. Seeley, indicate the weight assigned to her opinion with explanation, reevaluate and address Franklin's RFC if necessary based upon those reevaluations, and redetermine any other impacted steps in the sequential analysis. Additionally, upon remand, the ALJ shall apply <u>Drummond</u> to his decision to determine whether *res judicata* binds him to the prior Administrative Law Judges' determinations.

*H. Brent Brennenstuhl*
**H. Brent Brennenstuhl**
**United States Magistrate Judge**

October 9, 2015

## NOTICE

Therefore, under the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C) and Fed.R.Civ.P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties. Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. If a party has objections, such objections must be timely filed or further appeal is waived. Thomas v. Arn, 728 F.2d 813 (6th Cir.), aff'd, 474 U.S. 140 (1984).

**H. Brent Brennenstuhl**
**United States Magistrate Judge**

Copies: Counsel

October 9, 2015